Mr. Thomas V. Dannheisser Santa Rosa County Attorney 6495 Caroline Street Milton, Florida 32570-4592
Dear Mr. Dannheisser:
You ask substantially the following question:
Is the Supervisor of Elections required to segregate overvote and undervote ballots by use of the county's optical scanning equipment pursuant to a public records request when the overvote and undervote ballots have already been segregated manually?
In sum:
The Supervisor of Elections is required to segregate overvote and undervote ballots by use of the county's optical scanning equipment pursuant to a public records request even though the overvote and undervote ballots have already been segregated manually, provided that the requestor pays for the costs of the mechanical segregation of ballots in accordance with the provisions of the Public Records Law.
You have advised this office that Santa Rosa County, in conducting elections, utilizes paper ballots that are scanned by optical scanning equipment. According to your letter, the Supervisor of Elections, at the request of several newspapers, manually segregated the overvote and undervote ballots from the 2000 presidential election. The manual segregation was viewed by media representatives. While the New York Times Company requested a mechanical segregation, it did observe the manual segregation. According to the New York Times Company's count, the manual segregation produced a seventeen percent decrease in overvotes and a twenty-two percent decrease in undervotes from that initially registered on election day.
The company, therefore, has again requested that the overvote and undervote ballots be segregated mechanically.
It is a general policy of this state that the records of state and local governments shall be open for inspection by any person.[1]
Such a right of access is now recognized in our state Constitution.[2] Pursuant to section 119.07(1)(a), Florida Statutes, every person having custody of a public record "shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or the custodian's designee."
The paper ballots in question clearly constitute public records.[3] Although sections 119.07(1)(c), Florida Statutes, and101.572, Florida Statutes, place restrictions on who may handle the ballots,[4] they do not remove the ballots from the inspection requirement of section 119.07(1), Florida Statutes.
Recently, the Circuit Court of the Twentieth Judicial Circuit, in and for Charlotte County, addressed a similar request for the mechanical segregation of the overvote and undervote of ballots by means of optical scanners. In Sentinel Communications, Inc. v.Anderson,[5] the court concluded that the request for such a mechanical segregation of the ballots was authorized under the Public Records Law. The court noted that the requested information could be retrieved with the existing equipment and program maintained by the supervisor of elections and that the evidence offered by the supervisor of the possibility of degradation of the ballots failed to show that the alleged degradation "would be other than de minimus."[6] The court further recognized that the newspaper had no other way to identify the ballots that the supervisor's equipment recorded as containing undervotes or overvotes since the newspaper is prohibited from handling the ballots.
The court held that the newspaper had the right to meaningful access to the public records it requested and that the request for mechanical segregation of the specific ballots should not, therefore, be denied. In response to the supervisor's argument that such a ruling might result in other requests for inspection, the court stated:
"Defendant's argument that an adverse ruling might result in a virtual flood of requests cannot be a basis on which access to public records can be denied. Further, the provision of the Public Record Law allowing the Supervisor to charge a reasonable service charge for extensive use of information technology resources or the labor cost of personnel providing the service will likely control the number of requests as well as provide funds to allow the Supervisor to provide the service."[7]
The court thus ordered the supervisor of elections to employ the equipment she utilizes and maintains to segregate the ballots requested by the newspaper. The court also recognized that the supervisor was entitled under the Public Records Laws to be compensated for the costs of her employees' time and found that the rate of $13 per hour per employee of the supervisor would be charged to, and paid by, the newspaper making the public records request.[8]
Subsequently in Knight-Ridder, Inc. v. Stafford,[9] the circuit court in the Fourth Judicial Circuit ordered the supervisor of elections to segregate the undervote ballots manually rather than by machine as requested by the newspaper. In both cases, however, the court required the supervisor of elections to segregate the overvote or undervote in response to a public records request.
In ordering a manual rather than a machine segregation, theKnight-Ridder court was particularly concerned with the integrity of the ballots.[10] The court noted that testimony given during the hearing indicated that substantially more chads were released during machine handling of ballots than were released during manual examination and concluded that if manual sorting disturbs fewer chads, "then manual sorting is the method which could reasonably be expected to yield results closest to the numbers asthey existed at the moment the votes were cast."[11] (emphasis in original)
This would not appear to be the case where optical scanning equipment is used; rather, running the ballots through the optical scanning equipment would appear to yield results closest to those that existed on election day. In fact, your letter cites the New York Times report that the manual segregation produced seventeen percent fewer overvotes and twenty-two percent fewer undervotes than registered on election day.
It appears that the requested information may be retrieved with the existing equipment and program maintained by the supervisor of elections. As noted by the court in Sentinel Communications, Inc.v. Anderson, supra, the newspaper has no other way to identify the ballots that the supervisor's equipment recorded as containing undervotes or overvotes since the newspaper is prohibited from handling the ballots. The fact that the newspaper observed the manual segregation does not preclude the newspaper from making a public records request for the mechanical segregation of the overvote and undervote ballots.
Accordingly, I am of the opinion that the supervisor of elections is required to segregate the overvote and undervote ballots by use of the county's optical scanning equipment pursuant to a public records request even though the overvote and undervote ballots have already been segregated manually, provided that the requestor pays for the costs of the mechanical segregation of ballots in accordance with the provisions of the Public Records Law.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 119.01(1), Fla. Stat.
[2] See, Art. I, s. 24(a), Fla. Const. 
[3] See, s. 119.011(1), Fla. Stat., defining "Public records."And see, s. 101.572, Fla. Stat. Cf., Op. Att'y Gen. Fla. 93-48 (1993), discussing the inspection of ballots.
[4] See, s. 119.07(1)(c), Fla. Stat. ("When ballots are produced under this section for inspection or examination, no persons other than the supervisor of elections or the supervisor's employees shall touch the ballots."); and s. 101.572, Fla. Stat. ("no persons other than the supervisor of elections or his or her employees or the county canvassing board shall handle any official ballot or ballot card").
[5] Case No. 01-48 CA-SW (Fla. 20th Jud. Cir., Charlotte Co., January 19, 2001).
[6] Id. at p. 7.
[7] Id. at pp. 7-8.
[8] See, s. 119.07(1)(b), Fla. Stat., stating:
"If the nature or volume of public records requested to be inspected, examined, or copied pursuant to this subsection is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by personnel of the agency involved, or both, the agency may charge, in addition to the actual cost of duplication, a special service charge, which shall be reasonable and shall be based on the cost incurred forsuch extensive use of information technology resources or thelabor cost of the personnel providing the service that is actuallyincurred by the agency or attributable to the agency for theclerical and supervisory assistance required, or both. "Information technology resources" shall have the same meaning as in s. 282.303(12)." (e.s.)
[9] Case Nos. 01-937 CA and 01-939 CA (Fla. 4th Jud. Cir., Duval Co., February 27, 2001).
[10] The court noted that the supervisor as a defendant in pending federal litigation, "has a duty to prevent spoliation of the evidence in that case. This factor distinguishes the case at bar from the situation in other counties where no litigation is pending concerning these ballot cards." Slip. Op. at p. 5.
[11] Id. at p. 2.